**Opinion issued May 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-01044-CV

————————————

## IN THE INTEREST OF P.H. AND A.C., CHILDREN

———————————————————————————————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-06501J**

———————————————————————————————————

## MEMORANDUM OPINION

In this accelerated appeal, Q.H. challenges the trial court's order terminating her parental rights to her children, P.H., born in November 2010, and A.C., born in December 2011. The mother contends that the evidence is legally and factually insufficient to support the trial court's findings that termination was in her sons'

best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(E), (F), (O), or (P) (West Supp. 2013). We affirm.

## Background

The mother has an extensive history with the Texas Department of Family and Protective Services (DFPS). Before P.H. was born, the mother had given birth to six other children and had either relinquished her parental rights or lost custody to all of them. She admitted to having an addiction to crack cocaine, and she used the drug during three of her pregnancies. From December 2003 through March 2011, the mother accrued ten criminal convictions on charges ranging from trespass to cocaine possession to prostitution, for which she received sentences from ten days up to two years' confinement. The mother has a diagnosis of schizoaffective disorder and takes prescribed medication to alleviate its symptoms.

Four months after P.H.'s birth, the mother was convicted of prostitution. In December 2011, DFPS received a referral alleging neglectful supervision of P.H. as a result of the mother's drug use. At the time, the mother was eight months pregnant with A.C.

A.C. was born prematurely and with a hole in his heart. Although DFPS had ruled out the allegations in the December 2011 referral, it opened a Family Based Safety Services (FBSS) case to help the mother obtain appropriate housing and to provide parenting classes and assistance in learning to care for A.C. During the

2

ongoing FBSS, the mother, who by then had become pregnant with her ninth child, tested positive for cocaine use.

The mother received a referral to a drug rehabilitation facility, where she successfully completed outpatient treatment on October 1, 2012. Six weeks later, however, the children's daycare facility contacted DFPS to report that the mother had failed to pick up P.H. and A.C. at the end of the day, and that it had transported the children to the home of a maternal aunt. The next day, the mother reported to CPS office. She admitted to using cocaine and submitted to an oral swab test, which yielded a positive result for the presence of cocaine. DFPS took P.H. and A.C. into custody and instituted these termination proceedings.

In January 2013, the mother reported to the testing facility, but walked out without giving a hair or urine sample, resulting in a presumptively positive test. The mother again entered a drug treatment facility; while she was there, she gave birth to her ninth child. DFPS took that child into custody when the mother tested positive for cocaine in July, and she tested positive again in August 2013.

At the time of trial, P.H., A.C., and their baby brother resided together at the same foster home.

After a bench trial, the trial court terminated the mother's parental rights to both P.H. and A.C. under Texas Family Code 161.001, subsections (1)(E) for endangering conduct, (O) for the mother's failure to comply with the family

service plan's requirements, and (P) for her use of a controlled substance in a manner that endangered the children either without successfully completing a substance abuse program or despite having completed it. TEX. FAM. CODE ANN. § 161.001(1)(E), (O), and (P). The court also found that termination of the mother's parental rights was in the children's best interest. *Id.* § 161.002(2) (West Supp. 2013).

## Sufficiency of the Evidence

### *Standard of Review*

The mother challenges the legal and factual sufficiency of the trial court's finding that termination was in the children's best interest. A strong presumption exists that a child's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In a case to terminate parental rights by DFPS under section 161.001 of the Family Code, DFPS must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

4

In a legal sufficiency review in a parental-rights-termination case, the appellate court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which DFPS bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so

significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### Best Interest

In *Holley v. Adams*, the Texas Supreme Court provided a nonexclusive list of factors that the factfinder in a termination case may use in determining the best interest of the child. 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and DFPS need not prove all factors as a condition precedent to parental termination. *In re C.H.*, 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.— Houston [1st Dist.] 2007, no pet.). The same evidence of acts or omissions that support termination under section 161.001(1) may be probative in determining a

child's best interest. *In re C.H.*, 89 S.W.3d at 28. Nevertheless, termination of the parent-child relationship is not justified when the evidence shows that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex. App.—Houston [1st Dist.] 1986, no writ).

*Analysis*

DFPS presented evidence that for at least the past ten years, the mother has had a pattern of cocaine usage and concomitant criminal conduct. She had tested positive for cocaine during three pregnancies, and DFPS had removed several other children from her care. The mother admitted that she had struggled with addiction to crack cocaine since 2003, and that the longest she had gone without using cocaine since becoming addicted was for the year preceding A.C.'s birth. She testified that she relapsed into crack cocaine use shortly after his birth and conceded that her tendency to relapse into drug use was endangering to her children. Evidence that the mother regularly used drugs while pregnant or caring for children suggests that she is not willing or able to provide the child with a safe environment. *In re A.C.*, 394 S.W.3d 633, 688–89 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89

7

S.W.3d 679, 688–89 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see* TEX. FAM. CODE ANN. § 263.307.

The mother testified that—although she voluntarily relinquished her parental rights to other children in the past—for the first time, she had made an effort to comply with the court-ordered service plan for these children. DFPS had provided extended support services for the mother through FBSS before removing P.H. and A.C. from her care when she tested positive for cocaine use. After their removal, the mother tested positive for cocaine use two more times, in July and August 2013. The tests results showed that she used cocaine only a few months before trial, while P.H. and A.C. were in DFPS custody and she was caring for her newborn. At trial, the mother insisted that she had not used crack cocaine since January, but she had no explanation for her positive test results in July and August.

DFPS provided evidence that P.H. and A.C. recently moved to join their youngest brother in a foster home, where they are doing well and A.C. is receiving early childhood therapeutic interventions. Although the home is not an adoptive placement, it is a safe place where the boys' needs are being met.

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the mother's parental rights was in P.H. and A.C.'s best interest. *See* TEX. FAM. CODE ANN § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 265–66.

8

Viewing the same evidence in a neutral light, the disputed evidence is not so significant as to prevent a factfinder from forming a firm belief or conviction that termination of the mother's parental rights was in P.H. and A.C.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re H.R.M.*, 209 S.W.3d at 108. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the mother's parental rights was in P.H. and A.C.'s best interest.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.